UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**NORIS BABB**

    **Plaintiff,**

v.                                                                          Case No.:
**SLOAN D. GIBSON**
**DEPARTMENT OF VETERANS AFFAIRS,**

    **Defendant.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL
## INJUNCTIVE RELIEF REQUESTED

Plaintiff, Noris Babb complains of Defendant, Sloan D. Gibson as Acting Secretary of the Department of Veterans Affairs as follows:

1. This court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, including 42 U.S.C. 2000e-16 and the Age Discrimination in Employment Act of 1967 (29 U.S.C. 626).

2. Plaintiff has complied with all jurisdictional prerequisites to action under Title VII of the Civil Rights Act of 1964 as amended including having exhausted their administrative remedies.

3. C.W. Bill Young VA Healthcare System (Young VAHCS), formerly known as Bay Pines VA Health Care System, is a Veterans Administration (VA) hospital and medical center with related services.

4. It is broken down into various services. Dr. Mike Tyler (Tyler) is a Clinical Pharmacist at Young VAHCS. Now, he is the Plaintiff's first-line supervisor. At all times material to this complaint, Dr. Marjorie Howard (Howard) was the Plaintiff's direct supervisor.

Gary Wilson (Wilson) is the Chief of Pharmacy, Dr. Keri Justice (Justice) is Assistant Chief of Pharmacy, and Dr. Camaro West-Lee (West-Lee) is Assistant Chief of Pharmacy. Each of the employees of the VA as described herein were employed by the Defendant and were acting within the course and scope of his or her employment with the Defendant at the time of the conduct described herein. Each of the employees was there during the relevant times of this complaint.

5. Donna Trask (Trask) and Anita Truitt (Truitt) are fellow employees of Noris Babb, and like the Plaintiff are GS-12 Clinical Pharmacists at Young VAHCS and worked in the same Clinical Pharmacy at Young VAHCS during the relevant times of Babb's complaint. Both Trask and Truitt have filed administrative complaints and federal lawsuits against Young VAHCS on the grounds of sex, age, reprisal, and hostile work environment. Babb was named as a Trask and Truitt witness in the EEO administrative process, and she gave testimony during those administrative proceedings in behalf of Trask and Truitt. Babb gave specific testimony as to Wilson's and Justice's actions in those cases, as well as other information supportive of Trask and Truitt. Wilson and Justice as well as other management of the Defendant became aware of her testimony. As a result of Babb's testimony, shortly thereafter, the Defendant began to commit acts of reprisal against her because she gave that testimony in behalf of the EEO claims of Trask and Truitt.

6. The Plaintiff, Babb, is a female over the age of forty who is a GS-12/10 Clinical Pharmacist at Young VAHCS. Plaintiff has been employed at Young VAHCS since 2006. Plaintiff has held this position for eight (8) years.

7. Babb filed an informal EEO complaint on May 6, 2013. Babb filed her formal complaint on June 21, 2013. More than 360 days have passed since the informal filing date, thus satisfying the jurisdictional requirements.

## GENERAL ALLEGATIONS

### Sex, Age, Reprisal, and Hostile Work Environment

8. Babb has been subjected to a hostile work environment and harassment based upon sex (female), age, and reprisal (EEO activity) when:

   a. Since Fall of 2012, Howard has denied the Plaintiff's repeated requests for training in anticoagulation. This practice has occurred over several months. Babb and other Pharmacists were involved in a PACT (Patient Aligned Care Team). After hearing that Young VAHCS was short in the anticoagulant clinic and needed assistance, Babb wanted to help out. However, the positions which were opened required pharmacists to have an advanced scope of practice in this area which required specific training in anticoagulants. Babb did not have the training in anticoagulation and asked Howard on several occasions for this training so that she may qualify for this position. These requests were never granted and as a result Babb did not get the necessary training in order to qualify for this job. In fact, younger pharmacists were hired for these positions and the anticoagulant training was not required for these pharmacists.

   b. On March 22, 2012 at a Patient Aligned Care Team meeting, with employees present, Howard asked Babb "When do you retire? This remark was made by Howard at one of the PACT meetings. Babb was offended by the remark, as she was the oldest pharmacist in the group. Babb's belief was that Howard is trying to see how soon Babb is going to leave employment at Young VAHCS so that she could put one of the younger pharmacists in her position. In part because the management at Young VAHCS favors younger pharmacists who

3

are residency trained rather than older pharmacist such as Babb, who are not residency trained, but rather are trained by experience and are board certified. There is favoritism towards younger Pharmacists who have doctorate degrees over older Pharmacists with the same degrees.

c. In September 2012, Howard told Babb that Babb was not allowed to participate in the construction of a new or revised Service Agreement between Pharmacy and Geriatrics. Howard told Babb that the agreement was just between service chiefs, Wilson as Chief of Pharmacy, and Dr. Leonard Williams, the Chief of Geriatric Care and Extended Care. Babb had been the expert in the geriatric field of Pharmacy. In previous years, the Chief of Geriatrics had the geriatric clinic providers and Babb work on the service agreement between the Geriatric Clinic and the Pharmacy. The new Service Agreement resulted in the loss of Babb's Scope of Practice. Furthermore, Babb learned that a younger female, infectious disease pharmacist, Lindsey Childs, and a male pharmacist, William Lavinghousez were allowed to participate in the construction of their Service Agreements.

d. During a conversation prior to an RAC meeting Keri Justice, Assistant Chief of Pharmacy asked Babb "have you seen the movie Magic Mike?" John Hoeldtke, Pharm D, asked, "what's that?" Justice replied, "a middle aged woman movie." Babb felt humiliated and embarrassed from Justice's comment about her age.

e. On September 27, 2012, Howard denied Babb's attendance for the Geriatrics and Extended Care Patient Aligned Care Team (PACT) training. In early to mid-September 2012, Babb found out that a teleconference for Geriatrics and Extended Patient Aligned Care training would be held for the PACT that she was on. Babb repeatedly requested to be able to attend this training session, but Howard denied those requests and stated that it was late notice and she was unable to arrange coverage or cancel one of Babb's clinics. Babb could have arranged her

4

schedule in her clinic so that she could attend; however, she was not allowed to attend. Another pharmacist, Marena Sulik, was allowed to cancel her clinical session so that she could attend this teleconference. In addition, a younger female pharmacist was allowed to go to the training teleconference. Babb was impacted as a result of not being allowed to attend this teleconference because it the training was required for the PACT.

  f. In October 2012 Babb received her Mid-term Performance Appraisal and asked Howard for clarification on the item "mentoring." Howard replied "don't worry about that, that's for an outstanding." On November 29, 2012 however, Babb received a "fully successful" on the mentoring element, not an "outstanding" on her Final Evaluation Performance Appraisal. When Babb inquired with Howard about this, Howard replied, "you can go to the Union and file a grievance."

  g. In December 2012, Babb received a verbal reprimand by Wilson for not having training approved by the Education Department. One of the issues between Babb and Wilson involved a cardiac class that she had a pharmacy resident teach. The material given to Babb was very old and typewritten and looked unprofessional, so Babb had the packet updated by a resident. Wilson reprimanded her for not having this package approved by the Education Department. Babb did send this package for approval, but in the meantime, Babb was not allowed to teach the class any longer. The same material was handed out by two male counterparts, Eric Mathis and Victor Rozance, in a previous class without any reprimand.

  h. On February 6, 2013, while Babb was discussing her disappointment on the revocation of her advanced scope of practice with her supervisor Ms. Howard. Babb stated "so no promotion for me" and Howard replied "there never was." Howard informed Babb that she could not be promoted to GS-13, because Babb did not get the number of patients required in her

5

clinic and that Babb needed to have 25% of her time spent seeing patients. The numbers of patients, however, were cut by management so that Babb could not meet that quota and to prevent her from meeting the standard for promotion. On the other hand, a younger female Pharmacist, Marena Sulik, was given the numbers so that she could qualify for a promotion to GS-13.

i. On February 15, 2013, Babb realized that Wilson removed her advanced scope of practice despite the fact that it wasn't due to expire until October 31, 2013. By pulling her advanced scope, Babb could not be promoted to GS-13. The GS-13 position would have given her the ability to order medications without a doctor cosigning it and the ability to do this when other pharmacists with advanced scope of practices were not available. Having this scope of practice pulled changed Babb's career which resulted in no commensurate raise in pay or other benefits. In addition, this meant that Babb could no longer be in promotable status with the other pharmacists in the PACT.

j. On March 27, 2013, Babb became aware that Wilson was excluding Babb from promotions by implementing new qualification standards. These qualification standards would make it easier for those remaining pharmacists to qualify with advanced scope of practice to be promoted to GS-13. This would had benefited Babb had not her scope of practice been taken away.

k. On April 18, 2013, Babb was selected specifically as a witness of probable knowledge for an administrative proceeding. The Director of Young VAHCS had received an anonymous letter postmarked March 13, 2013 which was to Wilson's home address. This letter contained derogatory comments about Wilson's leadership, alleging low morale, low job satisfaction, among other vulgar statements. For reasons unknown, Babb was the sole witness for

the pharmacy board. Babb knew nothing about the letter and was confused as to why she had been called as a witness in this investigation.

l.     On April 23, 2013, Babb became aware by email from Wilson that she was not selected for the position of Clinical Pharmacy Specialist, anticoagulation GS-12, Announcement No. NY-13-CRP-845941. Babb was interviewed for this position by three panel members Rob Stuart, Kim Hal, and Cassie Sidnewski. The selecting official was Keri Justice. Ms. Justice was aware that Babb had been a witness in the prior EEOs filed by Trask and Truitt. The two pharmacists chosen for these positions were females around thirty (30) years old, Sarah Groff and Amy Mack. Both individuals had their doctorates, but did not have the experience that Babb possessed. Babb was at a significant disadvantage because all along she had been denied the necessary training for anticoagulation in the first place which would have increased the likelihood of her selection. Babb believes that she was denied this training as a result of reprisal for her earlier testimony in the Trask and Truitt cases.

m.     On April 24, 2013 Justice denied Babb a lateral move from the geriatric primary care PACT to the Mod B PACT. Originally, in June 2012, Howard had offered this proposed lateral move, to Babb. Initially, Babb turned down this move because she had planned on working in Geriatrics with the GPC interdisciplinary team to increase the pharmacy PACT GPC grid and assist in reaching the team's goals. Babb however, reconsidered and agreed to accept the lateral move. Upon acceptance of the move, Keri Justice informed her that she could not move anyone into a position without advertising it. As a result, the lateral Mod B PACT position move was no longer an option. Babb not only had to leave the Geriatric clinic where she had worked, but she ended up as a float pharmacists. She lost her office and her duties changed as a

result. Babb believes that all this was done by Justice in retaliation for her testimony in the Trask and Truitt cases.

n.   On June 18, 2013, Babb learned she had been written up with two separate Reports of Contact. Prior to these alleged incidents, Babb had never received a write-up for any reason. The first Report of Contact was initiated by Mary Kiso RN, the Chief Manager of Geriatrics, referencing an incident alleging occurring April 22, 2013 where Babb changed the dosage of a drug for an elderly person to a lower dose, which was done so due to an FDA mandate. The second Report of Contact was also initiated by Kiso dated June 12, 2013 alleging that Babb did not answer a page, which was during the time Babb went home sick from work. Both Reports of Contact were then given to the Clinical Pharmacy Supervisor, Rob Stewart.

## Count I

### Sex and Age Discrimination

9.   Plaintiff, Noris Babb sues Sloan D. Gibson, as Acting Secretary of the Department of Veterans Affairs for age and sex discrimination under Title VII and 29 U.S.C.

10.   Plaintiff incorporates and re-alleges paragraphs 1 through 8.

11.   As a direct and proximate result of the foregoing conduct, Plaintiff has been denied equal employment opportunity for wages, promotion, and other terms and conditions of employment by the Defendant due to age and sex (female).

12.   The above discriminatory actions were taken by the supervisory personnel within the VA in order to deprive the Plaintiff of employment and other employment action because of their age and sex.

13.   The Defendant has intentionally maintained these discriminatory and unlawful practices to the detriment of the Plaintiff.

8

14. The above-referenced actions have created an intolerable hostile work environment.

15. The Defendant at all relevant times knew, or should have known, of the above-referenced discrimination against the Plaintiff.

16. The Defendant has failed to take necessary action to prevent or correct the complaint of discrimination and, in fact, ratified such conduct.

17. The Defendant, through the Plaintiff's managers and supervisors has engaged in, directed or ratified conduct, and denied and frustrated the Plaintiff's efforts to obtain relief under Title VII.

18. The Defendant, through acceptance of the complained of conduct, has fostered an attitude among supervisors within the Bay Pines VAHCS that age discrimination and sexual discrimination are acceptable employment practices.

19. Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, the Plaintiff have been and continue to be denied their rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

20. As a result of the foregoing, the Plaintiff has been damaged. Those damages include, but are not limited to loss of pay; loss of benefits; loss of an amicable working environment; loss of career and professional opportunities; payment of attorneys' fees and legal costs; harm to her professional reputations; and humiliation, degradation, embarrassment, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer from these damages absent relief from this Court.

21.     Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions precedent, or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

### Count II
### (Retaliation)

22.     Plaintiff, Noris Babb sues Sloan D. Gibson, as Acting Secretary of Veterans Affairs, for retaliation under Title VII and 29 USC 626.

23.     Plaintiff incorporates and re-alleges paragraphs 1 through 8 and 11 through 19.

24.     Plaintiff engaged in EEO activity which is protected under Title VII.

25.     The Defendant was aware of the Plaintiff's protected or EEO activities under Title VII.

26.     The aforesaid adverse employment actions, other adverse actions, misconduct, and other conduct, acts and omissions to the Plaintiff's detriment, were all taken (or failed to be taken) by administrators and managing and supervisory personnel with the Young VAHCS in retaliation for the protected or EEO activity of the Plaintiff including those set forth above.

27.     As a direct and proximate result of the protected or EEO activity, Plaintiff has suffered the adverse employment actions and other adverse actions, including these set forth above.

28.     Young VAHCS has intentionally maintained these retaliatory and unlawful practices to the detriment of its employees.

29.     The Defendant at all relevant times knew or should have known of the retaliatory

actions being taken against the Plaintiff.

30. The Defendant failed to take necessary action to prevent or correct the retaliatory actions being taken and, in fact, ratified such conduct.

31. The Defendant, through the supervisors of the Plaintiff, has engaged in, directed, and/or ratified retaliatory conduct, and has frustrated the Plaintiff's efforts to obtain relief under Title VII.

32. The Defendant, through acceptance of such conduct, has fostered an attitude among administrators, managers and supervisors at the Young VAHCS that retaliation against employees in order to discourage protected EEO activity is an acceptable employment practice by administrators, managers and supervisors at the Young VAHCS.

33. Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Plaintiff has been and continues to be denied her right to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

34. As a result of the foregoing, Plaintiff has been damaged. Such damages include, but are not limited to loss of pay; loss of benefits; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss of career and professional opportunities; harm to professional reputations; and humiliation, anxiety, degradation, embarrassment, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

35. Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

### Count III
### (Hostile Work Environment)

36. Plaintiff, Noris Babb sues Sloan D. Gibson, as Acting Secretary of Veterans Affairs, for hostile work environment based upon sex, age and retaliation.

37. Plaintiff incorporates and re-alleges paragraphs 1 through 8; 11 through 19; and 24 through 33.

38. The aforesaid actions and conduct have created an intolerable hostile work environment.

39. As a result of the foregoing, Plaintiff has been damaged. Such damages include, but are not limited to payment of attorneys' fees and legal costs, loss of an amicable work environment, humiliation, anxiety, degradation, embarrassment, physical injury or illness, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

40. Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## Count IV
## (Injunctive Relief)

41. Plaintiff, Noris Babb, sues Defendant Sloan D. Gibson, as Acting Secretary of the Department of Veterans Affairs.

42. Plaintiff incorporates and re-alleges paragraphs 1 through 8, 11 through 19; 24 through 33; and 38 through 39.

43. Unless the above practices are enjoined, Plaintiff will suffer irreparable harm.

44. There is (1) a substantial likelihood of success on the merits; (2) irreparable injury that will be suffered unless an injunction is issued; (3) the threatened injury to the Plaintiff is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest.

45. Plaintiff requests the Court award her attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions and conduct:

    a. Violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as described above including retaliation against Plaintiff for protected or EEO activity and discrimination based on age and sex (female).

    b. Such other practices, actions or conduct that the court deems appropriate and proper to enjoin.

WHEREFORE, Plaintiff demand trial by jury of all issues so triable and such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, Noris Babb hereby demands a trial by jury on all issues so triable.

Dated: July 17, 2014

Respectfully submitted,

_____
Joseph D. Magri
Florida Bar No. 0814490
Merkle Magri & Meythaler, P.A.
5601 Mariner St., Suite 400
Tampa, FL 33609
Fax.: (813) 281-2223
Email: jmagri@merklemagri.com

14