UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NORIS BABB

     Plaintiff,

v.                              Case No.: 8:14-cv-1732-T-33TBM
ROBERT A. MCDONALD, Secretary,
DEPARTMENT OF VETERANS AFFAIRS,

     Defendant.
_____/

### THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
### INJUNCTIVE RELIEF REQUESTED

Plaintiff, Noris Babb complains of Defendant, Robert A. McDonald, Secretary, Department of Veterans Affairs as follows:

1.     This court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, including 42 U.S.C. § 2000e-16 and the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 626).

2.     Plaintiff has complied with all jurisdictional prerequisites to action under Title VII of the Civil Rights Act of 1964 as amended including having exhausted their administrative remedies.

3.     C.W. "Bill" Young VA Healthcare System (Young VAHCS), formerly known as Bay Pines VA Health Care System, is a Veterans Administration (VA) hospital and medical center with related services.

4.     It is broken down into various services.  Mike Tyler (Tyler) is a Clinical Pharmacist at Young VAHCS.  Now, he is the Plaintiff's first-line supervisor. At all times material to this complaint, Dr. Marjorie Howard (Howard) was the Plaintiff's direct supervisor.

Gary Wilson (Wilson) is the Chief of Pharmacy, Dr. Keri Justice (Justice) is Assistant Chief of Pharmacy, and Dr. Camaro West-Lee (West-Lee) is Assistant Chief of Pharmacy. Each of the employees of the VA as described herein were employed by the Defendant and were acting within the course and scope of his or her employment with the Defendant at the time of the conduct described herein.  Each of the employees was there during the relevant times of this complaint.

## **GENERAL ALLEGATIONS**

5.     Donna Trask (Trask) and Anita Truitt (Truitt) are fellow employees of Noris Babb, and like the Plaintiff at material times were GS-12 Clinical Pharmacists at Young VAHCS and worked in the same Clinical Pharmacy at Young VAHCS during the relevant times of Babb's complaint.  Both Trask and Truitt have filed administrative complaints and current federal lawsuits against Young VAHCS on the grounds of gender, age, reprisal, and hostile work environment.  Younger, predominately male pharmacists were given Patient Aligned Care Team (PACT) positions as clinical pharmacy specialists.  Despite comprising only 13.9% of the pharmacists, younger males received two-thirds of the positions.  Younger females received the remaining third.  Females over 40 received none of the positions.  These positions were upgraded to GS-13 positions.  Only certain positions, including the ones Drs. Truitt and Trask applied for, were advertised.  While they had extensive experience in Disease State Management (DSM) they were denied training for an advanced scope given to a male who was selected.  Another male received a PACT position without DSM experience.  Procedures that had been in place for years concerning advance scopes and the support of the PACT position physicians whose patients they would have been working with were ignored.  Babb developed a good faith belief that Trask and Truitt were discriminated against.  She was named as a Trask and Truitt witness in the EEO

administrative process, and she assisted and participated in those administrative investigations by giving several statements in behalf of Trask and Truitt and related to what she described as gender and age discrimination against Drs. Truitt and Trask.   Trask case number was ORM 200I- 0516-2011104650 and Truitt case number was 200I-0516-2011104649.   She sent those statements on April 26, 2012, May 10, 2012 (Truitt only),  and May 11, 2012  to an  EEO investigator  detailing her knowledge with respect to Dr. Trask's and Dr. Truitt's  respective discrimination claims. Her statements were "protected activity" under 42 USC § 2000e- 3(a) and under EEO Guidelines §§ 8-11-C 1, both of which forbid retaliation by the Defendant against any individual who assists or participates in any manner in EEO proceedings.  Babb wrote in an email dated May 10, 2012 during Dr. Truitt's proceedings that "I do fear retaliation from Pharmacy Admin."  Babb gave specific statements as to Wilson's and Justice's actions in those cases, as well as other information supportive of Trask and Truitt.

6.     The statements supported Dr. Trask and Dr. Truitt's contentions that there was and is gender and age discrimination and a hostile work environment against older females in the Pharmacy department.  Dr. Babb stated, *inter alia*, that older females were not given the training for positions that a younger male, Brian Steele, was given.  He received a Patient Aligned Care Team (PACT) position after being given the training.  Dr. Trask was removed from a Spinal Cord Team that was supposed to transition into PACT and William Lavinghousez, a male with no experience was placed on the team.   Drs. Truitt and Trask were denied training for credentials, which were made central to appointment to these positions which was given to Dr. Steele.  The alleged reason was short staffing.  However, young males were seen giving tours of the facility to students while the facility was allegedly short staffed.   Trask was denied attendance at meetings a young male was allowed to go to.   Another younger male, Mark

Lobley, without experience or training in Disease State Management also got a PACT position which was not advertised.  She also stated that the PACT scoring sheets were changed in a fashion that did not value experience, so that the new system disfavored older females. Dr. Babb stated that Dr. Trask lost her clinical position, a chance for advancement. She confirmed there was a hostile work environment associated with Wilson, Justice and West.  She identified condescending remarks made by Keri Justice at Mod meetings towards older female pharmacists which insinuated that we would not be able to transition to the New PACT models. These remarks were never made to younger males.

7.     Wilson and Justice as well as other management of the Defendant became aware of Dr. Truitt and Dr. Truitt's EEOC cases by at least September 2011 when Dr. Wilson discussed them with an EEOC counselor.  Dr. Wilson testified in Trask on April 18, 2012 and in Truitt on April 18, 2012.  Dr. Justice testified in Trask on April 17, 2012 and Truitt on April 18, 2012. During the administrative process they became aware of Dr. Babb's participation.  Subsequently, Reports of Investigations (ROIs) containing the Plaintiff's statements were sent to the Regional EEO officer on June 7, 2012 (Trask) and June 21, 2012 (Truitt).   Shortly thereafter the Defendant began to commit acts of reprisal and acts of harassment against her.  In addition in December 19, 2012 Donna Trask's interrogatory answers in the Administrative Proceedings in *Donna Trask v.   Eric Shineki,* EEOC No.   510-2012-00328X, Agency No. 200I-0516-2011104650,   Dr. Trask identified Dr. Babb as one of the witnesses to EEO case in Interrogatory Answers.  On February 8, 2013, the Plaintiff opposed discrimination when she met with Keri Justice and complained about treatment of older females and the lack of promotion of older females.  On March 24, 2014, she testified in Trask and Truitt's Federal Court EEO case.

8.     The Plaintiff, is a female over the age of forty, now age 53, who is a GS-12/10 Clinical Pharmacist at Young VAHCS.  Plaintiff has been employed at Young VAHCS since 2006.  Plaintiff has held this position for eight (8) years.

9.     Babb filed an informal EEO complaint on May 6, 2013. Babb filed her formal complaint on June 21, 2013, which contained 11 Claims.   On July 26, 2013, Babb requested to add to her formal complaint two separate Reports of Contact write ups which were Event No. 12. On August 2, 2013, the ORM issued a partial acceptance of the Babb's complaint stating that all her Events Nos. 1 through 12 were accepted as part of a hostile work environment based on gender (female), age, and reprisal, and accepted also Events  Nos.  10 and 11 as independently actionable discrete claims which were "also sufficiently related to the overall pattern of harassment."   The Plaintiff testified on November 26, 2013.  Supervisor Wilson testified on December 6, 2013, Supervisor Howard gave an affidavit November 27, 2013 and follow up on December 18, 2013.  A Federal Complaint was filed on July 17, 2014.  More than 360 days have passed since the informal filing date, thus satisfying the jurisdictional requirements.  Subsequent like and related acts occurred after the Federal Complaint was filed (¶s 10o and p) and have been added to this complaint based upon case law.

**Gender, Age, Reprisal, and Hostile Work Environment**

10.     Babb has been subjected to a hostile work environment and harassment based upon gender (female),   age, and except for paragraph 10b, reprisal (EEO activity).

a.     Since Fall of 2012, Howard has denied the Plaintiff's repeated requests for training in anticoagulation.  This practice has occurred over several months. Babb and other Pharmacists were involved in a PACT.  After hearing that Young VAHCS was short in the anticoagulant clinic and needed assistance, Babb wanted to help out. However, the positions

which were opened required pharmacists to have an advanced scope of practice in this area which required specific training in anticoagulants. Babb had an advanced scope of practice in disease state management but she did not have the training in anticoagulation and asked Howard on several occasions for this training so that she may qualify for this position. These requests were never granted and as a result Babb did not get the necessary training for this job.   In fact, younger female pharmacists, who were at least ten years younger than the Plaintiff, were hired for these positions and the anticoagulant training was not required for these pharmacists.

b.      On March 22, 2012 at a PACT meeting, with employees present, Howard asked Babb "When do you retire?" This remark was made by Howard at one of the PACT meetings. Babb was offended by the remark, as she was the oldest pharmacist in the group.   Babb's belief was that Howard is trying to see how soon Babb is going to leave employment at Young VAHCS so that she could put one of the younger pharmacists in her position.  In part because the management at Young VAHCS favors younger pharmacists who are residency trained rather than older pharmacist such as Babb, who are not residency trained, but rather are trained by experience and are board certified.  There is favoritism towards younger Pharmacists who have doctorate degrees over older Pharmacists with the same degrees.     This comment was embarrassing to Babb and created stress for her in work place.

c.      September 2012, Howard told Babb that Babb was not allowed to participate in the construction of a new or revised Service Agreement between Pharmacy and Geriatrics. Howard told Babb that the agreement was just between service chiefs, Wilson as Chief of Pharmacy, and Dr. Leonard Williams, the Chief of Geriatric Care and Extended Care.   Babb had been the expert in the geriatric field of Pharmacy.  The new Service Agreement resulted in the loss of Babb's Scope of Practice. Furthermore, Babb learned that a younger female, infectious

disease pharmacist, Lindsey Childs, and a male pharmacist, William Lavinghousez both of whom were more than ten years younger than the Plaintiff were allowed to participate in the construction of their Service Agreements. To be excluded from these types of meetings has been recognized by the EEOC as a form of a behavior which affects a term, condition, or privilege of employment.

       d.    During a conversation prior to an RAC meeting Keri Justice, Assistant Chief of Pharmacy asked Babb "have you seen the movie Magic Mike?" John Hoeldtke, Pharm D, asked, "what's that?" Justice replied, "a middle aged woman movie."  Babb felt humiliated and embarrassed from Justice's comment about her age.  This also increased her stress in the workplace. With regard to gender, a supervisor told the Plaintiff that Supervisor Justice "definitely likes the guys better."  All the pharmacists who received advertised PACT positions were in their thirties. They were predominately male. A male who was the Plaintiff's age received a PACT position in Sarasota.

       e.    On September 27, 2012, Howard denied Babb's attendance for the Geriatrics and Extended Care PACT training. In early to mid-September 2012, Babb found out that a teleconference for Geriatrics and Extended PACT training would be held for the PACT that she was on.  Babb repeatedly requested to be able to attend this training session, but Howard denied those requests and stated that it was late notice and she was unable to arrange coverage or cancel one of Babb's clinics.   Babb could have arranged her schedule in her clinic so that she could attend; however, she was not allowed to attend. Another pharmacist Marina Sulik, who is more than 10 years younger than Plaintiff, was allowed to cancel her clinical session so that she could attend an off campus training conference with her PACT team. All of the other PACT pharmacists were allowed to attend training during this same time period.  Babb was impacted as

a result of not being allowed to attend this teleconference because the training was required for the PACT.   To be excluded from these types of meetings has been recognized by the EEOC as a form of a behavior which affects a term, condition, or privilege of employment.   Again this lack of training cost her promotion which would have brought her pay, compensation, benefits or a higher salary.

f.     In October 2012 Babb received her Mid-term Performance Appraisal and asked Howard for clarification on the item "mentoring." Howard replied "don't worry about that, that's for an outstanding." On November 29, 2012 however, Babb received a "fully successful" on the mentoring element, not an "outstanding" on her Final Evaluation Performance Appraisal. When Babb inquired with Howard about this, Howard replied, "you can go to the Union and file a grievance."  This lower proficiency rating cost her chance for higher pay, salary, or an award or bonus, and possibly a promotion.

g.     In December 2012, Babb received a verbal reprimand by Wilson for not having training approved by the Education Department.  One of the issues between Babb and Wilson involved a cardiac class that she had a pharmacy resident teach.   The material given to Babb was very old and typewritten and looked unprofessional, so Babb had the packet updated by a resident.   Wilson reprimanded her for not having this package approved by the Education Department. Babb did send this package for approval, but in the meantime, Babb was not allowed to teach the class any longer.   The same material was handed out by two male counterparts, Eric Mathis and Victor Rozance, who had been using the material in their classes for several years since 1997 without any reprimand.   The denial of allowing Babb to teach this class thereafter really annoyed her and gave her more stress.

h.     On February 6, 2013, while Babb was discussing her disappointment on the revocation of her advanced scope of practice with her supervisor Ms. Howard. Babb stated "so

no promotion for me" and Howard replied "there never was."   Howard informed Babb that she could not be promoted to GS-13, because Babb did not get the number of patients required in her clinic and that Babb needed to have 25% of her time spent seeing patients.  The numbers of patients, however, were cut by management so that Babb could not meet that quota and to prevent her from meeting the standard for promotion. On the other hand, a younger female Pharmacist, Marina Sulik, was given the numbers so that she could qualify for a promotion to GS-13.    As a result, plaintiff was told she could not be promoted to GS-13 at that time which could had brought her a higher salary, pay, compensation and benefits.

      i.     Shortly after Babb opposed discrimination in conversation with Supervisor Justice, on February 15, 2013, Babb became aware that Wilson removed her advanced scope of practice despite the fact that it wasn't due to expire until October 31, 2013.  By pulling her advanced scope, Babb could not be promoted to GS-13. The GS-13 position would have given her the ability to order medications without a doctor cosigning it and the ability to do this when other pharmacists with advanced scope of practices were not available.  Having this scope of practice pulled changed Babb's career which resulted in no commensurate raise in pay or other benefits. In addition, this meant that Babb could no longer be in promotable status with the other pharmacists in the PACT.

      j.     On March 27, 2013, Babb became aware that Wilson was excluding Babb from promotions by implementing new qualification standards.  These qualification standards would make it easier for those remaining pharmacists to qualify with advanced scope of practice to be promoted to GS-13.  This included the predominately male pharmacists selected to the PACT. This could have benefited Babb had her scope of practice not been taken away.  As a result,

plaintiff knew she could not be promoted to GS-13 which would have brought her a higher salary, pay, compensation and benefits.

k.     On April 18, 2013, Babb was selected specifically as a witness of probable knowledge for an administrative proceeding.   The Director of Young VAHCS had received an anonymous letter postmarked March 13, 2013 which was to Wilson's home address. This letter contained derogatory comments about Wilson's leadership, alleging low morale, low job satisfaction, among other vulgar statements. Drs. Babb, Truitt and Trask were all called to testify.  Babb knew nothing about the letter and was confused as to why she had been called as a witness in this investigation. This was an act that was not justified under the circumstances.  This act brought additional stress upon Babb.

l.     On April 23, 2013, Babb became aware by email from Wilson that she was not selected for the position of Clinical Pharmacy Specialist, anticoagulation GS-12, Announcement No. NY-13-CRP-845941.  Babb was interviewed for this position by three panel members Rob Stewart Kim Hall, and Cathy Sidnewski.  The selecting official was Keri Justice.  Ms. Justice was aware that Babb had been a witness in the prior EEOs filed by Trask and Truitt, and that Babb opposed discrimination. The two pharmacists chosen for these positions were females around thirty (30) years old, Sarah Groff and Amy Mack who were close to over 20 years younger than the Plaintiff. Both individuals had their doctorates, but did not have the experience that Babb possessed.  A score sheet used to rank the applicants favored younger applicants by not including years of experience as a pharmacist.  Babb's far superior qualifications were not assessed. Babb was at a significant disadvantage because all along she had been denied the necessary training for anticoagulation in the first place which would have increased the likelihood of her selection. Babb believes that she was denied this training as a result of reprisal

for her earlier testimony in the Trask and Truitt cases.  As a result, plaintiff was not  promoted to the Clinical Pharmacy Specialist, anticoagulation GS-12 which could had brought her a higher salary, pay, compensation and benefits because all anticoagulation Clinical Pharmacists were upgraded to GS-13.

m.      On April 24, 2013 Justice denied Babb a lateral move from the geriatric primary care PACT to the Mod B PACT.  Originally, in June 2012, Howard had offered this proposed lateral move, to Babb. Initially, Babb turned down this move because she had planned on continuing to work in Geriatrics with the GPC interdisciplinary team to increase the pharmacy PACT GPC grid and assist in reaching the team's goals. After Truitt and Trask's ROIs were sent to the Agency, that position was taken away as alleged in paragraphs 10c and 10h.  Babb therefore reconsidered and agreed to accept the lateral move.   However, Keri Justice then informed her that she could not move anyone into a position without advertising it**,** a position she only took with Truitt and Trask and did so despite Human Resources recommendation to the contrary.  However, it was not advertised for over a year.  The lateral Mod B PACT position move was no longer an option. A male was moved into a PACT position without it being advertised.  Given what had happened as alleged in paragraphs 10c, e and h, Babb felt she had to leave the Geriatric clinic where she had worked. She ended up as a float pharmacist. She lost her office and her duties changed as a result.  All this was done by Justice in retaliation for her testimony and her statements in the Trask and Truitt cases.

n.      On June 18, 2013, Babb learned she had been written up with two separate Reports of Contact.  Prior to these alleged incidents, Babb had never received a write-up for any reason.   The first Report of Contact was initiated by Mary Kiso, Nurse Case Manager, Geriatrics, referencing an incident allegedly occurring April 22, 2013 where Babb changed the

dosage of a drug for an elderly person to a lower dose, which was done so due to an FDA mandate. The second Report of Contact was also initiated by Kiso dated June 12, 2013 alleging that Babb did not answer a page, which was during the time Babb went home sick from work. Both Reports of Contact were then given to the Clinical Pharmacy Supervisor, Rob Stewart. These were unjustified acts which gave Babb increased stress in the workplace.

o.      In or around October 2014, a younger female, Megan Martinez, who was more than ten years younger than the Plaintiff, and who was not engaged in EEO activity, obtained a position different from Endo-Pharmcare.  She was allowed to get a job for Clinical Pharmacy Specialist Float, GS-13, which was not posted anywhere so that the Plaintiff did not know that the job opened up.  The Plaintiff would have applied for this job had she known of this position.

p.      In March 2014, the Plaintiff obtained a Clinical Specialist Pharmacy position which was announced as a GS-13.  It had a compressed schedule of working four nine hours days a week from Tuesday through Friday and four hours on Saturday.  She had wanted a GS-13 for some time and it had been denied.  She took this position in order to receive a GS-13. However, after taking it she remained as a GS-12 for months because, *inter alia*, she needed training.  She eventually was given the GS-13 but no training was done.   After reviewing her time cards**,** later**,** and time cards of other employees she learned that due to the scheduling, she was only entitled to four hours Holiday pay for each of the five legal federal Holidays on a Monday, (Martin Luther King Jr. Day, Presidents Day, Memorial Day, Labor Day and Columbus Day).  However, other employees were being paid the full amount of a holiday.  This act will cost at least $1000.00 a year in Holiday Pay in the future.

### COUNT I
### Retaliation

11.      Plaintiff, Noris Babb sues Robert A. McDonald, as Secretary of the Department

of Veterans Affairs, for retaliation under Title VII and 29 USC § 626.

12.    Plaintiff incorporates and re-alleges paragraphs 1 through 10, except paragraph 10b.

13.    Plaintiff engaged in EEO activity which is protected under Title VII and 29 USC § 626.  That included good faith opposition to unlawful gender and age discrimination as well as participation in her own EEO case and Drs. Trask and Truitt's case.

14.    As alleged in paragraphs 5, 6, 7, and 9 above the Defendant was aware of the Plaintiff's protected EEO activities.

15.    The discrete acts alleged are set forth in paragraphs 10j, 10 l, 10m, 10o, and 10p. Each of those acts followed shortly after Babb engaged in EEO activity.  Moreover, as alleged in paragraph 10, they are part of a long pattern of material adverse actions and antagonism against Babb.  As alleged, the adverse actions included loss of pay, credentials, duties, opportunity for advancement and positions.

16.    Babb has worked at the Bay Pines VA since 2004 and had never had a report of contact written up on her until she filed her claims.  She had an excellent record and developed the clinic in geriatrics.   Everything was proceeding smoothly up to June 2012 after she participated in the EEO cases of Drs. Trask and Truitt.  Denial of her training happened after that, her clinic was closed and her advanced scope was removed before it was set to expire. Among other things listed in paragraph 10, Babb was denied pay, advancement, positions, and had duties and credentials removed and training denied which was material to her advancement.

17.    As alleged in paragraph 10, the aforesaid adverse employment actions, other adverse actions, misconduct, and other conduct, acts and omissions to the Plaintiff's detriment, were all taken (or failed to be taken) by administrators and managing and supervisory personnel

with the Young VAHCS in retaliation for the protected or EEO activity of the Plaintiff including those set forth above.  They are the direct and proximate result of the EEO activity.

18.     The Defendant, through the supervisors of the Plaintiff, has engaged in, directed, and/or ratified retaliatory conduct, and has frustrated the Plaintiff's efforts to obtain relief and intentionally maintained these retaliatory and unlawful practices to the detriment of its employees.  The Defendant at all relevant times knew or should have known of the retaliatory actions being taken against the Plaintiff and failed to take necessary action to prevent or correct the retaliatory actions being taken and, in fact, ratified such conduct.

19.     The Defendant, through acceptance of such conduct in this case and others, including *Gowski v. Peake,* 682 F.3d 1299 (11th Cir. 2012) has fostered an attitude among administrators, managers and supervisors at the Young VAHCS that retaliation against employees in order to discourage protected EEO activity is an acceptable employment practice. For example, in *Gowski*, the highest ranking officials at the Young VAHCS were found to be involved in a scheme to retaliate in order to deter EEO activity, which was widely known at the facility and for which they were not punished as required by statute. As a direct and proximate result of actions of the Defendant and its administrators, managers and supervisors Plaintiff has been and continues to be denied her right to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq* and 29 USC § 626.

20.     As a result of the foregoing, Plaintiff has been damaged.  Such damages include, but are not limited to loss of pay; loss of benefits; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss of career and professional opportunities; harm to professional reputations; and humiliation, anxiety, degradation, embarrassment, and severe emotional suffering and distress.  Plaintiff will continue in the future to suffer the same damages

absent relief from this Court.

21.     Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT II

## Gender and Age Discrimination

22.     Plaintiff, Noris Babb sues Robert A. McDonald, as Secretary of the Department of Veterans Affairs for gender and age discrimination under Title VII and 29 U.S.C. § 626.

23.     Plaintiff incorporates and re-alleges paragraphs 1 through 10.  The discrete acts alleged are set forth in paragraphs 10 l and m.  The remainder of the allegations provide background evidence.

24.     As a direct and proximate result of the foregoing conduct, Plaintiff has been denied equal employment opportunity for wages, promotion, and other terms and conditions of employment by the Defendant due to gender (female) and age.

25.     The above discriminatory actions were taken by the supervisory personnel within the VA in order to deprive the Plaintiff of employment and other employment action because of their gender and age.  Given the long history of these actions and based upon all the conduct alleged in paragraphs 1 to 10, the Defendant at all relevant times knew, or should have known, of the above- referenced discrimination against the Plaintiff.  The Defendant has failed to take necessary action to prevent or correct the complaint of discrimination and, in fact, ratified such

conduct.  The Defendant, through the Plaintiff's managers and supervisors has engaged in, directed or ratified conduct, and denied and frustrated the Plaintiff's efforts to obtain relief.  The Defendant, through acceptance of the complained of conduct within the pharmacy department, has fostered an attitude among supervisors within the Bay Pines VAHCS that age discrimination and gender discrimination are acceptable employment practices.  Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, the Plaintiff have been and continue to be denied their rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq* and 29 USC § 626.

26.     As a result of the foregoing, the Plaintiff has been damaged.  Those damages include, but are not limited to loss of pay; loss of benefits; loss of an amicable working environment; loss of career and professional opportunities; payment of attorneys' fees and legal costs; harm to her professional reputations; and humiliation, degradation, embarrassment, and severe emotional suffering and distress.  Plaintiff will continue in the future to suffer from these damages absent relief from this Court.

27.     Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions precedent, or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

### Count III
### Hostile Work Environment

28.     Plaintiff, Noris Babb sues Robert A. McDonald, as Secretary of the Department

16

of Veterans Affairs, for hostile work environment based upon gender, age and retaliation.

29.     Plaintiff incorporates and re-alleges paragraphs 1 through 10; 13 through 19; and 25 and 26.  Included within this environment are adverse actions or material adverse actions within 45 days of filing the complaint as alleged in paragraphs 10 l and m.  In the case of retaliatory hostile work environment, the environment includes the material adverse actions alleged in paragraphs 10j, l, m, and p.

30.     The aforesaid actions and conduct have created an intolerable hostile work environment.

31.     As a result of the foregoing, Plaintiff has been damaged.  Such damages include, but are not limited to payment of attorneys' fees and legal costs, loss of an amicable work environment, humiliation, anxiety, degradation, embarrassment, physical injury or illness, and severe emotional suffering and distress.  Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

32.     Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

**Count IV**
**Injunctive Relief**

33.     Plaintiff, Noris Babb, sues Defendant, Robert A. McDonald, as Secretary of the Department of Veterans Affairs.

34.     Plaintiff incorporates and re-alleges paragraphs 1 through 10, 13 through 19; 25 and 26; and 20 through 32.

35.     Unless the above practices are enjoined, Plaintiff will suffer irreparable harm.

36.     There is (1) a substantial likelihood of success on the merits; (2) irreparable injury that will be suffered unless an injunction is issued; (3) the threatened injury to the Plaintiff is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest.

37.     Plaintiff requests the Court award her attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions and conduct:

a.     Violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* as described above including retaliation against Plaintiff for protected or EEO activity and discrimination based on age and gender (female).

b.     Such other practices, actions or conduct that the court deems appropriate and proper to enjoin.

WHEREFORE, Plaintiff demand trial by jury of all issues so triable and such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, Noris Babb hereby demands a trial by jury on all issues so triable.

Dated: December 19, 2014

Respectfully submitted,

*/s/   Joseph D. Magri*____
Joseph D. Magri
Florida Bar No.: 0814490
Merkle Magri & Meythaler, P.A.

5601 Mariner St., Suite 400
Tampa, FL 33609
Fax.: (813) 281-2223
Email: jmagri@merklemagri.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 19, 2014, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic

filing to the following CM/ECF participants:


A. Lee Bentley, III
United States Attorney
Michael Kenneth
Florida Bar No.: 44341
Assistant United States Attorney
400 North Tampa St., Ste. 3200
Tampa, Florida 33602
Tel: 813/274-6000
Fax: 813/274-6198
Email: michael.kenneth@usdoj.gov
Attorney for Defendant




*/s/JOSEPH D. MAGRI*
Joseph D. Magri